Jason M. Rudd, Tex. Bar No. 24028786
jason.rudd@wickphillips.com
John D. Gaither, Tex. Bar No. 24055516
john.gaither@wickphillips.com
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200

David J. Drez III, Tex. Bar No. 24007127
david.drez@wickphillips.com
Schyler P. Parker, Tex. Bar No. 24092937
schyler.parker@wickphillips.com
Wick Phillips Gould & Martin, LLP
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Phone: (817) 332-7788

*Counsel for Axis Energy Marketing, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AXIS ENERGY MARKETING, LLC[1] | § | Case No. 25-43200-elm7 |
| | § | |
| Debtors. | § | |

**AXIS ENERGY MARKETING, LLC'S ANSWER TO INVOLUNTARY PETITION FOR
RELIEF UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

Axis Energy Marketing, LLC ("Axis") files this answer in response to the involuntary petition [ECF 1] filed by Apricus Enterprises, LLC ("Apricus"), and in support states as follows:

**I. PRELIMINARY STATEMENT**

1. This involuntary proceeding arises out of a multiparty dispute concerning the purchase and delivery of contaminated crude oil. In summary, Axis contracted with Apricus to source and deliver crude oil to Axis's customers, including DK Trading & Supply, LLC ("Delek") and other third-parties. Apricus breached its agreement with Axis by failing to deliver oil within the parties' contractual specifications, causing a resulting alleged breach and litigation between Axis, Delek, and others.

---

[1] The last four digits of Axis Energy Marketing, LLC's federal tax identification number are 4649.

1

2. After several years of litigation, Axis, Delek, and other related parties reached a comprehensive agreement to settle their disputes. As discussed more fully below, that settlement resolved all disputed claims except the claims between Axis and Apricus and would have resulted in a multi-million-dollar payment to Axis that, in turn, would have funded (or potentially resolved) Axis's litigation against Apricus. The settling parties agreed that, as to the disputed claims between Axis and Delek, the settlement would be voided if an involuntary bankruptcy petition was filed against Axis within 90 days of the date of the settlement.

3. Apparently unhappy with the terms of the settlement, Apricus initiated this involuntary proceeding as a transparent litigation tactic designed to derail the settlement, block Axis's receipt of sufficient funding to continue to litigate against Apricus, and extract additional value from Axis and, in turn, Delek. Axis is not subject to entry of an order for relief in this case because Apricus lacks standing as a petitioning creditor and cannot meet its burden to demonstrate that Axis is not paying its undisputed debts as they come due. The involuntary petition should be dismissed and, because it was filed in bad faith, the Court should enter judgment against Apricus for costs, fees, damages, and punitive damages.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. The Pending Litigation

4. Axis is essentially a middleman that sources crude oil to be delivered by suppliers for Axis's customers. Axis entered into an agreement with Delek for Axis to source and have delivered crude oil to locations designated by Delek. To fulfill its agreement with Delek, Axis contracted with Apricus and other suppliers to source and deliver crude oil to Delek at various locations. Axis also contracted with Apricus to source and deliver crude oil to other third parties.

5. Under the terms of the agreement between Axis and Apricus, Apricus represented and warranted that it would source the crude oil from specific locations and that the oil it supplied

would meet certain specifications and not be contaminated. Apricus breached the parties' agreement by failing to deliver oil within the agreed specifications to Axis's customers, including Delek. Among other things, Apricus delivered contaminated crude oil to Delek on Axis's behalf.

6. On April 20, 2023, Delek sued Axis in Midland County, Texas, currently pending as Cause Number CV59511 in the 385th District Court (the "Midland Lawsuit"). Delek alleged that oil delivered by Apricus on behalf of Axis was contaminated and sought damages exceeding $24,000,000. As a result of the alleged breach by Axis of its agreement with Delek, Delek withheld $8,976,336.87, which included amounts Axis would have ultimately owed to Apricus had Apricus properly performed under the contract.

7. As a result of Apricus's prior breach, and because Delek had not paid Axis for the contaminated oil delivered to Delek, Axis withheld payment of approximately $5,800,000 allegedly owed to Apricus. Thereafter, Apricus filed suit against Axis in the 190th District Court of Harris County, Texas, Cause No. 202347355 (the "Houston Lawsuit"). After a complex procedural history, the Houston Lawsuit was ultimately abated to permit the parties' intertwined disputes to be resolved in the Midland Lawsuit. Delek also brought affirmative claims against Apricus for the delivery of contaminated crude in the Midland Lawsuit.

8. The Midland Lawsuit was set for trial in September 2025.

**B. Settlement Between Axis, Delek, and Related Parties**

9. Although Axis disputed Delek's claims and had valuable claims against Apricus arising from Apricus's underlying breach, Axis was unable to continue funding litigation on multiple fronts. After multiple efforts at a global resolution of the Midland Lawsuit failed, Axis, Delek, and certain related third parties ultimately reached an agreement to resolve the disputes among themselves, leaving only the pending (a) crossclaims between Axis and Apricus for

resolution; (b) Delek's affirmative claims against Apricus; and (c) crossclaims between Axis and another supplier of the contaminated oil.

10.     Under the terms of a Confidential Settlement Agreement and Release dated as of June 23, 2025 (the "Settlement"), Axis, JC Moon (an Axis related party), Delek, and Lion Oil Company, LLC (a Delek-related party) agreed to settle and resolve all claims amongst themselves. Under the terms of the Settlement, Axis agreed to Delek's recoupment of $6,796,336.87 of amounts owed to Axis, with the remaining balance of $2,180,000.00 being paid to Axis under certain specified conditions.[2]   The parties agreed to mutual releases but provided that the Settlement would be voided upon the occurrence of certain conditions subsequent, including (i) Axis being made the subject of a receivership or (ii) the filing of an involuntary petition against Axis within 90 days of the date of the Settlement.

**C.     Apricus's Repeated Efforts to Void the Settlement**

11.     Apricus objected to the terms of the Settlement, which would have funded Axis's continued litigation against Apricus (or facilitated a consensual resolution), and immediately attempted to void it by seeking appointment of a receiver over Axis in the Midland Lawsuit.  By order dated August 13, 2025, the court presiding over the Midland Lawsuit denied Apricus's request.  Undeterred, Apricus filed an involuntary chapter 7 petition against Axis in this Court less than two weeks later, effectively seeking the same relief and driven by the same motivation – to void the settlement and gain an advantage in the Midland Lawsuit.

12.     Apricus's efforts are an obvious litigation tactic and its involuntary petition does not meet the basic requirements of the Bankruptcy Code.

---

[2]   Axis further agreed to the assignment of certain claims against Paloma Midstream, LLC ("Paloma") to Delek, the proceeds of which would fund Delek's payment to Axis.

### III. ANSWER IN RESPONSE TO INVOLUNTARY PETITION

**A.      Apricus is not Eligible to Serve as a Petitioning Creditor**

13.      Apricus's involuntary petition must be dismissed for multiple reasons.  First, the Court should not enter an order for relief in this case because Apricus lacks standing as a petitioning creditor.  Section 303(b)(2) provides that, if an alleged debtor has less than 12 creditors then one such creditor whose claim is "not subject to bona fide dispute as to liability or amount" can serve as a petitioning creditor.  *In re Quinto & Wilks, P.C.*, 531 B.R. 594, 605 (Bankr. E.D. Va. 2015); *In re Wagner*, 1998 WL 1571402, at *2 (Bankr. S.D. Iowa Apr. 25, 1988).  As the petitioning creditor, Apricus bears the burden to establish that its claim is not subject to bona fide dispute and that it has standing to bring the involuntary petition.  *In re CorrLine Intern., LLC*, 516 B.R. 106, 146 (Bankr. S.D. Tex. 2014).

14.      As set forth above, Apricus's claims against Axis, and Axis's counterclaims against Apricus, are the subject of pending litigation in which the state court recently denied Apricus's motion for summary judgment—not once, but twice—and which was set for trial shortly after the filing of the involuntary petition.  These facts are prima facie evidence that Apricus's claim is subject to bona fide dispute.  *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659-60 (5th Cir. 2014).  Because Apricus's claim is subject to bona fide dispute as to amount and liability, Apricus cannot serve as a triggering creditor and the Court should not enter an order for relief on Apricus's involuntary petition.  *Id*. at 660 ("Congress has made clear that a claimholder does not have standing to file an involuntary petition if there is a 'bona fide dispute as to liability or *amount*' of the claim.") (emphasis in original).

**B.      Axis is Generally Paying its Undisputed Debts as They Come Due**

15.      The Court may only enter an order for relief against Axis upon a showing that Axis "is generally not paying [its] debts as such debts become due unless such debts are the subject of

5

a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1).[3]  This determination is made as of the petition date.  *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993).  As the petitioning creditor, Apricus bears the evidentiary burden of making this showing.  *In re Haymond*, 638 B.R. 853, 861 (Bankr. S.D. Tex. 2022).  Apricus cannot satisfy this burden.

16.     As of the petition date, Axis had nine total creditors, all of which were either being paid in the ordinary course of business or held contested claims subject to bona fide dispute. Specifically, the majority of claims against Axis consist of disputed claims by Apricus, Delek, Paloma, and related parties that were either subject to bona fide dispute in the Midland Litigation or were released under the Settlement.  All of Axis's other debts, such as fees incurred in the Midland Lawsuit, were being paid in the ordinary course of business.

17.     Stated differently, the only debts that Axis was not paying as of the petition date were the disputed debts at issue in the Midland Lawsuit.  As with Apricus's disputed claim, the fact that those debts have been the subject of multiyear litigation is evidence that they are subject to bona fide dispute and thus do not count for purposes of section 303(h)(1).  *Green Hills*, 741 F.3d at 659-60.  Accordingly, Apricus cannot meet its burden to establish that entry of an order for relief is appropriate under section 303(h)(1).

**C.     The Involuntary Petition Should Be Dismissed as a Bad Faith Litigation Tactic**

18.     "[A] creditor whose claim is the object of unresolved multiyear litigation should not be permitted to short-circuit that process by forcing the debtor into bankruptcy."  *Green Hills*, 741 F.3d at 660.  "The section 303(b) requirement exists to prevent that very use of involuntary bankruptcy."  *Id*.  Despite this clear directive from the Fifth Circuit, Apricus filed this involuntary

---

[3] No "custodian" has been appointed over Axis's assets within 120 days of the petition date.  11 U.S.C. § 303(h)(2).

proceeding in contravention of the statutory requirements of section 303(b) to void the Settlement between Axis and Delek and to gain leverage in pending litigation.

19. "Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986). Courts have therefore concluded that bad faith constitutes grounds for dismissal of an involuntary petition. *See In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 335 (3d Cir. 2015).

20. This case satisfies multiple criteria courts consider in determining whether an involuntary petition was filed in bad faith. *Id*. at 336 (identifying non-exclusive list of criteria). As relevant here, Apricus's involuntary petition (i) does not satisfy the statutory criteria for filing the petition; (ii) is not meritorious; (iii) is being used as a litigation tactic in pending litigation; (iv) is being used as a substitute for customary debt-collection procedures; and (v) is suspiciously timed to void the Settlement. *Id*. These factors, when considering the totality of the circumstances, dictate that Apricus filed the petition in bad faith. *Id*.

## IV. REQUEST FOR ENTRY OF JUDGMENT

### A. Request for Entry of Judgment for Costs and Attorneys' Fees

21. Section 303(i)(1) provides that, if the Court dismisses an involuntary petition other than by consent of the petitioning creditors and debtor, it may enter judgment against the petitioners for costs and reasonable attorneys' fees. Given the defects in the petition and Apricus's improper motive in filing it, the Court should exercise its discretion to enter judgment awarding Axis its costs and fees in responding to the petition.

### B. Request for Entry of Judgment for Compensatory and Punitive Damages

22. Section 303(i)(2) further provides that, if the Court dismisses an involuntary petition that was filed in bad faith, it may enter judgment against the petitioner for actual damages

caused by the filing and punitive damages.  As discussed above, Apricus filed the petition against Axis as a litigation tactic to void the Settlement and gain leverage in the Midland Lawsuit, which is "a classic demonstration of bad faith."  *See, e.g., In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 908 (Bankr. N.D. Ill. 1994).  Apricus's bad faith is exacerbated by the fact that Apricus lacks standing under section 303(b)(2), and the petition is therefore facially deficient.  *In re Topfer*, 595 B.R. 52, 58 (Bankr. M.D. Pa. 2019).  Under these facts, the Court should award Axis compensatory and punitive damages in an amount to be determined at trial.

## V. CONCLUSION & PRAYER

23.      Apricus's involuntary petition does not satisfy the statutory requirements of section 303 and was filed solely to void the Settlement between Axis and Delek and to gain additional leverage in pending litigation.  Apricus cannot meet its burden to demonstrate that its claim is not subject to bona fide dispute as to amount or liability or that Axis is not paying its undisputed debts as they come due.  The involuntary petition should therefore be dismissed.  Because the petition was filed in bad faith, the Court should enter judgment in favor of Axis against Apricus for costs, attorneys' fees, compensatory damages, and punitive damages.

24.       Accordingly, Axis requests entry of a judgment (i) dismissing the involuntary petition, (ii) awarding Axis its costs, attorneys' fees, compensatory damages, and punitive damages, and (iii) awarding Axis any further relief the Court deems appropriate.

Dated: October 1, 2025

Respectfully submitted,

*/s/ John D. Gaither*
Jason M. Rudd, Tex. Bar No. 24028786
jason.rudd@wickphillips.com
John D. Gaither, Tex. Bar No. 24055516
john.gaither@wickphillips.com
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200

David J. Drez III, Tex. Bar No. 24007127
david.drez@wickphillips.com
Schyler P. Parker, Tex. Bar No. 24092937
schyler.parker@wickphillips.com
Wick Phillips Gould & Martin, LLP
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Phone: (817) 332-7788

*Counsel for Axis Energy Marketing, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 1, 2025, a true and correct copy of the foregoing document was served by the Court's ECF noticing system on all parties that consent to such service via electronic filing.

*/s/ John D. Gaither*
John D. Gaither